UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELAINE B.,

    Plaintiff,

  v.

KILOLO KIJAKAZI,

    Defendant.[*]

No. 20 CV 4184

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Elaine B.[1] appeals from the Social Security Commissioner's decision denying her disability insurance benefits and supplemental security income. For the reasons explained below, the Commissioner's decision is reversed and and the matter is remanded back to the agency for proceedings consistent with this decision.

**I.    Legal Standard**

Judicial review of social security decisions is limited. I must decide whether the agency "applied the proper legal criteria." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Briscoe ex rel. Taylor v. Barnhard*, 425 F.3d 345, 351 (7th Cir. 2005)).[2] I must also decide whether the administrative law judge's factual findings

---

[*] Under Federal Rule of Civil Procedure 25(d), Acting Commissioner of Social Security Kilolo Kijakazi replaces former Commissioner Andrew Saul as the defendant in this case.

[1] I refer to plaintiff by her first name and the first initial of her last name to comply with Internal Operating Procedure 22.

[2] Only a "final decision" made by the Social Security Commissioner is subject to judicial review. 42 U.S.C. § 405(g). A ruling by the Appeals Council, as is the case here, is considered a final decision. 20 C.F.R. § 416.1481; *see also* 42 U.S.C. § 405(a) (the Commissioner has broad authority to create rules and regulations to enact social security laws).

are supported by substantial evidence. *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019). Substantial evidence is a low bar and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). I analyze whether the ALJ built an "accurate and logical bridge" between the evidence and the conclusion, *Peeters v. Saul,* 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin,* 758 F.3d 834, 837 (7th Cir. 2014)), and whether the ALJ's analysis had "enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe ex rel. Taylor*, 425 F.3d at 351). An ALJ's credibility findings are given special deference and will only be overturned if "patently wrong." *Apke v. Saul*, 817 Fed. App'x. 252, 257 (7th Cir. 2020) (citing *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). I can affirm, modify, or reverse the Commissioner's decision, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g).

## II. Facts

Elaine B. was diagnosed with osteoarthritis, osteopenia, degenerative disc disease or herniated disc, shoulder impairment, degenerative joint disease of the right knee, a hallux valgus deformity, overlapping toes, and flat feet. [10-1] at 327, 329–34, 337, 553, 571–74.[3] She also reported a history of multiple sclerosis and depression. *Id.* at 392, 425, 524–25, 527, 571–72, 574. Elaine B. applied for disability

---

[3] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are from the CM/ECF header placed at the top of documents.

benefits and supplemental security income. *Id*. at 194–200. At a state-ordered physical examination, plaintiff could not stand heel-and-toe, perform knee squats, or walk fifty feet without extreme exhaustion. *Id*. at 514. The examiner also noted that Elaine B. had MS, back pain that was worse with activity, an unsteady gait without the use of assistive devices, and "would have difficulty lifting, carrying, or handling objects in a seated position." *Id*. at 514–15. The Social Security Administration denied Elaine B.'s initial claim, and she requested reconsideration. *Id*. at 84–85, 113–14. The agency denied plaintiff's application because it found that her conditions did not "significantly limit physical or mental ability to do basic work activities." *Id*. at 100, 122. Plaintiff appealed the denial to an ALJ, and plaintiff and a vocational expert testified at a hearing. *Id*. at 32–67. The ALJ denied the claim. *Id*. at 27. The ALJ determined that Elaine B. was capable of medium work with some limitations and was not disabled. *Id*. at 22, 27.

At the hearing, plaintiff amended her onset date from January 1, 2010 to July 8, 2017. [10-1] at 17, 221. To decide whether Elaine B. was disabled, the ALJ used the agency's five-step process. *Id*. at 19–27. The five steps ask: 1) whether the claimant is currently employed; 2) whether the claimant has a severe impairment; 3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; 4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work; and 5) whether the

3

claimant is capable of performing any work in the national economy. 20 C.F.R. § 404.1520.[4]

At step one, the ALJ found that Elaine B. was not gainfully employed. [10-1] at 19. At step two, the ALJ found that plaintiff had six severe impairments: multiple sclerosis, osteoarthritis, degenerative disc disease, diffuse osteopenia, halgus deformity, and degenerative joint disease of the right knee. *Id.* at 20. The ALJ also noted that Elaine B. had degenerative joint disease of the shoulder but found that it was not severe because plaintiff had not received ongoing treatment and related examinations had been generally "unremarkable." *Id.* Finally, the ALJ found that Elaine B.'s depression was not severe and caused only a mild limitation in the area of interacting with others. *Id.* at 20–21.

At step three, the ALJ determined that plaintiff's impairments were not conclusively disabling. *Id.* at 21–22. So the ALJ assessed plaintiff's "residual functional capacity" in order to complete steps four and five. *Id.* at 22–25; *see* 20 C.F.R. § 416.920(a)(4)(iv). A claimant's RFC represents the most physical and mental activity the claimant can do in a work setting—eight hours a day, five days a week—despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). This is a broad assessment that considers: 1) all the relevant

---

[4] If the agency cannot determine disability at a step, it goes on to the next step. 20 C.F.R. § 404.1520(a)(4). The claimant has the burden of proving disability at steps one through four; the burden of proof shifts to the Commissioner at step five. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

evidence, medical and non-medical; 2) all the claimant's limitations, including non-severe ones; and 3) the claimant's physical and nonphysical limitations. *Id*.

The ALJ began the RFC analysis with Elaine B.'s symptoms. [10-1] at 22–23. Plaintiff said that she was unable to work because she suffered from multiple sclerosis, pain in her shoulder, back, knee, and foot. *Id*. at 23, 46, 226, 237. Elaine B. said that she struggled to perform many basic movements, had problems talking and seeing, could walk only a block or so before needing to rest, and was able to get around only with the aid of crutches or a cane. *Id*. at 60–61, 237, 512–15. Plaintiff also said she had depression. *Id*. at 232. At the hearing, Elaine B. testified that pain medications had not alleviated her symptoms and that she was attending physical therapy sessions. *Id*. at 57–58, 61. While plaintiff claimed that her symptoms prevented her from working, the ALJ rejected that claim because he found that Elaine B.'s symptoms were not as intense, persistent, or limiting as she alleged. *Id*. at 23.

Imaging in 2012 showed a disc problem in Elaine B.'s back, caused either by herniation or degenerative change. *Id*. at 329. Two years later, doctors found that plaintiff had a hallux valgus deformity with degenerative changes. *Id*. at 331. When Elaine B. sought help for chest pain, she was diagnosed with diffuse osteopenia and moderate degenerative disease of the thoracic spine. *Id*. at 331–32. Subsequent X-rays confirmed that plaintiff had a hallux valgus deformity and flat feet and showed degenerative changes of the right knee. *Id*. at 333–34, 551–54. In a series of exams,

Elaine B. reported a previous history of multiple sclerosis. *Id*. at 392, 416, 425, 461, 502, 515, 551.

At a state-ordered physical examination, plaintiff's gait was unsteady without assistance, she could not stand heel-and-toe, perform knee squats, or stand or walk easily. *Id*. at 514. The examiner found that Elaine B. could not walk more than fifty feet without exhaustion and that she would "have difficulty lifting, carrying, or handling objects in a seated position." *Id*. The examining doctor found that Elaine B.'s problems included untreated multiple sclerosis, depression, and back pain. *Id*. at 515. The state's doctor based his assessment only on his examination because he did not have access to Elaine B.'s medical records. *Id*. at 512.

Plaintiff's mental health history is mixed. Two depression screenings in 2018 were negative, [10-1] at 433, 515, but Elaine B. arrived for medical appointments tearful and depressed, and a third screening showed moderate depression. *Id*. at 524, 528.[5] During examinations, plaintiff generally demonstrated appropriate judgment and memory, was alert and oriented, and was able to maintain attention and concentration. *Id*. at 304, 514, 528, 534. In a function report completed for the Social Security Administration, Elaine B. indicated that she had no memory or concentration problems, handled personal care and some household chores, and attended church. *Id*. at 233–38.

---

[5] Plaintiff scored a twelve on the Patient Health Questionnaire, a diagnostic test that measures depression. *See* Kurt Kroenke, Robert L. Spitzer, & Janet B.W. Williams, *The PHQ-9: Validity of a Brief Depression Severity Measure*, 16 J. Gen. Internal Med. 606, 606–613 (2001), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1495268/. Twelve points falls in the range for moderate depression. *Id*.

From this record, the ALJ concluded that plaintiff had six impairments: multiple sclerosis, osteoarthritis, degenerative disc disease, diffuse osteopenia, valgus deformity, and degenerative joint disease of the right knee. *Id.* at 23. But the ALJ found that Elaine B.'s limits were not as extreme as she claimed because plaintiff's medical treatment had been conservative and irregular, plaintiff's range of motion in her spine, hips, knees, and ankles was normal in several physical examinations, and no medical opinion indicated that she was disabled. *Id.* at 23–25. The ALJ also discounted Elaine B.'s symptoms on the basis of her daily activities: plaintiff reported that she did laundry and swept her apartment, went out alone, shopped for food and clothes, and took the bus. *Id.* at 23–25. The ALJ concluded that Elaine B. had not established a medical need for a cane because no treating medical source had issued a related prescription. *Id.* at 25. The ALJ acknowledged plaintiff's reported depression but did not otherwise mention Elaine B.'s mental health. *Id.* at 23–25. The ALJ found that Elaine B. had the RFC to perform medium work with some physical limitations: "she can frequently operate foot controls bilaterally, occasionally stoop, crouch, kneel, crawl, occasionally climb ramps or stairs, and occasionally climb ladders, ropes, or scaffolds." *Id.* at 22. The ALJ did not include any limitations in the RFC related to plaintiff's depression. *Id.*

At step four, the ALJ compared plaintiff's RFC with the requirements of Elaine B.'s past relevant work as a nurse assistant. [10-1] at 25. On the basis of a vocational expert's testimony, the ALJ found that plaintiff's limitations would prevent her from returning to her previous work. *Id.* Based on plaintiff's RFC and the vocational

7

expert's testimony, at step five the ALJ concluded that there were other available jobs that plaintiff could perform in the national economy, including laundry worker, dining room attendant, and store laborer. *Id.* at 26–27. The ALJ concluded that Elaine B. was not disabled. *Id.* at 27.

Plaintiff requested review of the ALJ's decision by the Social Security Appeals Council, but the Council denied her request. *Id.* at 5–8, 181–82. The Appeals Council's denial made the ALJ's decision the final decision of the Commissioner. *Id.* at 5. Elaine B. then filed this lawsuit in federal court, seeking judicial review of the Appeals Council's decision. [1].

### III. Analysis

Although an ALJ is not required to mention every piece of evidence, *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021), he must build a "logical bridge" between the evidence related to Elaine B.'s limitations and the conclusion that she could lift as much as fifty pounds at a time, frequently lift or carry objects weighing up to twenty-five pounds, and stand or walk, off and on, for six hours a day. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014); *see* 20 C.F.R. §§ 404.1567(c), 416.967(c) (defining medium work); SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) (same). While the ALJ is in the best position to determine a witness's truthfulness and forthrightness, *Skarbek v. Barnhart*, 390 F.3d 500, 504–05 (7th Cir. 2004), the ALJ must still provide specific reasons, supported by the record, for discrediting a claimant's subjective symptoms. *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015). The court should be

able to trace the path of the ALJ's reasoning. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

In this case, the ALJ's reasoning is murky, and so I find that the ALJ's decision is not supported by substantial evidence. There are at least three problems here.[6] First, the ALJ centered his credibility analysis on plaintiff's failure to treat her conditions but did not consider reasons why Elaine B. had not sought treatment or only irregularly treated her conditions. Second, the ALJ misidentified Elaine B.'s onset date and age at onset. Third, the ALJ failed to confront contrary evidence and did not explain why he discredited some of plaintiff's symptoms. To build a logical bridge between the evidence and conclusion in this case, these errors must be addressed on remand.

---

[6] Plaintiff raises a host of other objections to the ALJ's decision, but none of them hold water. The ALJ did not impermissibly "play doctor" by centering his analysis on Elaine B.'s untreated MS. [11] at 4–10. In fact the ALJ barely mentioned plaintiff's MS, and his discussion of plaintiff's failure to treat was not specific to any one impairment. [10-1] at 22–25. Nor did the ALJ err by finding that Elaine B. had MS. *Id.* at 20, 23. The ALJ reasonably credited plaintiff's repeated assertions that she had been diagnosed with MS and those medical records that supported her statements. *See id.* at 60, 226, 515. While the ALJ's consideration of Elaine B.'s depression at the RFC stage was insufficient, the ALJ did adequately consider all of her *physical* conditions in combination by considering the record evidence in its entirety. *See* [10-1] at 24–25; 20 C.F.R. § 404.1523. Finally, the ALJ's RFC and hypothetical questions to the vocational expert were not overly generalized. While agency policy requires an ALJ to avoid general exertional categories like "medium" when "initially" determining an RFC, an exertional categorization is required at step five, and the ALJ adequately expressed plaintiff's functional limitations both in the RFC and in his hypothetical questions. POMS DI 24510.006(C); *see O'Connor-Spinner v. Astrue*, 627 F.3d 614 at 618–19 (7th Cir. 2010) (an ALJ must "orient the [vocational expert] to the totality of a claimant's limitations"); 20 C.F.R. § 404.1545.

A.  **Failure to Treat**

Infrequent treatment or a failure to follow a treatment plan "can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment." *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) (quoting *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008)). But an ALJ cannot "draw inferences 'about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.'" *Id.*; *see* 20 C.F.R. § 404.1530; SSR 16-3P, 2017 WL 5180304, at *9 (Oct. 25, 2017) ("We will not find an individual's symptoms inconsistent with the evidence in the record [on the basis of a failure to treat] without considering possible reasons he or she may not comply with treatment.").

The ALJ wrote that Elaine B.'s "conservative and irregular treatment history" and "lack of specialized treatment" undercut her alleged limitations. [10-1] at 24–25. But the ALJ nowhere considered plaintiff's explanations as to her conservative and irregular course of care. The record indicated that plaintiff did not "understand the appointment system" and had "low health literacy." *Id*. at 571. Plaintiff testified that she had missed physical therapy appointments because she could not afford to attend, *id*. at 48, and the record showed that she had been homeless and in financial distress. *Id*. at 432, 524, 533. Elaine B. also testified that she was reluctant to pursue additional foot surgery because a previous operation had been unsuccessful. *Id*. at 56.[7]

---

[7] Plaintiff argues that, contrary to the ALJ's analysis, the record contains evidence of physical therapy, treatment from an orthopedist, and treatment for her right shoulder. [11] at 19–20.

Not understanding the need for consistent treatment, an inability to pay, and a previously unsuccessful surgery recommended a second time are all possible reasons for a person not to follow prescribed treatment. *See* 20 C.F.R. § 404.1530; SSR 16-3P, 2017 WL 5180304, at *9 (Oct. 25, 2017). The Commissioner argues that the ALJ only considered plaintiff's failure to treat her conditions as part of Elaine B.'s treatment history, and that such consideration was not error. [16] at 13. But whether the ALJ used the frequency or extent of plaintiff's treatment to cast doubt on her credibility or to evaluate her symptoms, he was required to "explain how [he] considered the individual's reasons [not to pursue treatment] in [his] evaluation of the individual's symptoms." SSR 16-3P, 2017 WL 5180304, at *9 (Oct. 25, 2017); *see Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014). That didn't happen here.

## B.   Onset Date and Age

The ALJ twice listed the wrong date for plaintiff's onset, noting it as January 1, 2010, rather than the amended date, July 8, 2017. [10-1] at 18, 27. The ALJ also incorrectly listed plaintiff as fifty-two years old at onset, rather than the correct age: sixty years old. *Id*. at 25. While the ALJ elsewhere in his opinion got the date right, *id*. at 17, 19, and the vocational expert appeared to understand Elaine B.'s correct age at onset, *id*. at 66, it is not clear from the decision that the ALJ had these facts

---

Elaine B. testified that she attended physical therapy and the record indicates that she received referrals to physical therapy, an orthopedic specialist, and was scheduled for X-rays on her shoulder. *See* [10-1] at 46–49, 575. But the ALJ reasonably concluded that the record did not contain evidence of *treatment* from an orthopedist, physical therapy, or *ongoing* shoulder treatment, based on a lack of records corroborating plaintiff's claim that she had actually received care and attended physical therapy, rather than merely scheduled it. *Id*. at 20–25.

11

straight. This error of more than seven years is significant because age is an important factor at step five of the agency's analysis. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c).

### C. Contrary Evidence and Fatigue

The Commissioner argues that the ALJ's decision was supported by substantial evidence because no treating or examining physician found Elaine B. disabled and the ALJ considered the medical evidence of record, including examinations that revealed Elaine B.'s normal range of motion in her hips, knees, ankle, and spine. [16] at 4–5, 13; *see* [10-1] at 24. The absence of a medical opinion finding plaintiff disabled does not support the RFC, however, as such an opinion would have been on an issue "reserved to the Commissioner" and therefore "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(3)(i). While medical records indicating normal range of motion and strength offer some evidence to support the ALJ's RFC, they do not sufficiently connect the record of impairment in this case with the conclusion that plaintiff was capable of medium work with only minimal modifications.

For instance, these records about range of motion and strength do not show why the ALJ discredited plaintiff's claims about fatigue, a common symptom of both MS and depression. *See Milliken v. Astrue*, 397 Fed. App'x 218, 223, 2010 WL 4024908, at *5 (7th Cir. 2010). And the ALJ did not "confront the evidence that does not support [his] conclusion and explain why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Idoranto v. Barnhart*, 374 F.3d

470, 474 (7th Cir. 2004)). The ALJ ignored a physical examination that showed plaintiff had reduced range of motion in her shoulder, [10-1] at 574, and did not explain why plaintiff's confirmed unsteady gait and inability to squat did not support the alleged limitations. [10-1] at 24–25, 512–15. Based only on a lack of prescription the ALJ concluded that plaintiff had not "established a medical need for the use of a cane." [10-1] at 25. But a prescription for a cane is unnecessary, and a cane can be bought by anyone who needs one. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), *as amended on reh'g in part* (May 12, 2010); *Stahl v. Colvin*, 632 Fed. App'x 853, 860 (7th Cir. 2015) (reaching a similar conclusion about crutches). The ALJ should have squared his finding that Elaine B. had no need for a cane with the consultative examiner's finding that plaintiff's "gait was unsteady without the use of assistive devices." [10-1] at 25, 514.[8]

The ALJ's conclusion that Elaine B. was not disabled depended not only on the physical examinations in question, but also on plaintiff's failure to treat her conditions (for which she had an explanation), and age (which the ALJ got wrong at times). Medium work requires a substantial amount of standing, walking, and lifting. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c); SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). In this case, the ALJ did not offer sufficient evidence "as a reasonable mind

---

[8] The ALJ may have found the consultative examiner's findings about unsteady gait and inability to perform certain movements to be not persuasive. The ALJ noted that he did not "defer or give any specific evidentiary weight" to any medical findings and that he "did not provide articulation about the evidence that is inherently neither valuable nor persuasive." [10-1] at 25; *see* 20 C.F.R. § 404.1527. But the ALJ's decision is not clear on this front. He mentioned some specific findings of the consultative examiner that support the claimed limitations and did not explain why those findings were not valuable or persuasive.

13

might accept as adequate," *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019), to show how a person with a possible history of multiple sclerosis, a bad back and knee, among other conditions, could perform that level of work. Further explanation is required.[9]

### D. The ALJ's Errors Are Not Harmless

An error is harmless only if the ALJ would reach the same result on remand. *See Lambert v. Berryhill,* 896 F.3d 768, 776 (7th Cir. 2018). It is not clear that the ALJ would come to the same conclusions about Elaine B.'s ability to work, so the ALJ's errors regarding her capacity to work are not harmless. While plaintiff requests that I award benefits, that remedy is appropriate only "if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel. Taylor v.*

---

[9] Two other problems stand out in the ALJ's analysis and should be addressed on remand. First, "[a]n ALJ may consider a claimant's daily activities when assessing credibility ... but ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence." *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) (citing *Arnold v. Barnhart,* 473 F.3d 816, 823 (7th Cir. 2007); *Stewart v. Astrue,* 561 F.3d 679, 684 (7th Cir. 2009); *Carradine v. Barnhart,* 360 F.3d 751, 755 (7th Cir. 2004); *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001)); *see* 20 C.F.R. § 404.1529(c). ALJs must not equate daily living activities "with the rigorous demands of the workplace." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010)). Here, plaintiff said that she lived with but did not care for her daughter and granddaughter, walked half a block to a bus stop, could take the bus three stops, shopped for food and clothes, made small purchases at a store a block away, and completed household chores—laundry and sweeping—that took about ten minutes. [10-1] at 51–54, 232–36. The ALJ found that "the nature of these reported activities are internally inconsistent, and inconsistent with the allegations of severe pain and disabling symptoms." [10-1] at 23. While the ALJ was permitted to consider plaintiff's daily activities in order to assess her credibility, it is unclear how these brief, restricted activities are either internally inconsistent or undercut Elaine B.'s allegations of pain and limited mobility. *See Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). On remand, the ALJ should explain how he sees these activities as inconsistent with one another and with the medical record. Second, the ALJ should better address plaintiff's mental limitations. While the evidence of mental impairment in this case is minimal, to comply with the requirements of 20 C.F.R. § 404.1545(a)(2), the ALJ should go beyond a mere mention of plaintiff's symptom of depression and explain why no mental limits are necessary in Elaine B.'s RFC.

*Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005); *see Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020). The factual dispute whether Elaine B. was disabled remains unresolved, so an award of benefits is not permitted. Remand is the appropriate remedy. *See* 42 U.S.C. 405(g).

### IV. Conclusion

The Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this opinion. Enter judgment and terminate case.

ENTER:

                                                  Manish S. Shah
                                                  United States District Judge

Date: August 10, 2021